# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TIFFANY SMITH, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. 4:24-cv-811 |
| v. | § | Judge Mazzant |
| | § | |
| TOWER EXTRUSIONS, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion for Summary Judgment (Dkt. #18) and Defendant's Motion to Exclude Plaintiffs' Expert Brooks Rugemer (Dkt. #43). Having considered the motions and the relevant pleadings, the Court finds that Defendant's Motion for Summary Judgment (Dkt. #18) should be **GRANTED in part** and **DENIED in part**, and that Defendant's Motion to Exclude Plaintiffs' Expert Brooks Rugemer (Dkt. #43) should be **DENIED**.

## BACKGROUND

This is a personal injury case arising from the death of Asa Eugene Parnell ("Parnell"). On July 8, 2024, Parnell and his co-worker picked up a pre-loaded flatbed trailer from Defendant Tower Extrusions, LLC's ("Defendant") facility in Wylie, Texas (Dkt. #1). Plaintiffs, relatives of Parnell, allege that the trailer was illegally overloaded with thousands of pounds of aluminum (Dkt. #1). Parnell's co-worker, Armoni Royal ("Royal") testified that the load on the trailer was covered with "white film" or a "tarp" that made the contents of the load "blurry" (Dkt. #22-1 at p. 6). Royal also testified that Defendant's employees assured Parnell that they "already weighed" the load (Dkt. #22-1 at p. 13).

Security footage from Defendant's facility shows Parnell and Royal added their own tarp to the load then drove off in the afternoon on July 8, 2024. Royal testified that after leaving the facility, Parnell and Royal took the load to a "weight station," where they weighed the load and determined its weight exceeded applicable limits (Dkt. #22-1 at pp. 6–7). The footage shows that Parnell and Royal returned to Defendant's facility with the load that same evening.

After returning to Defendant's facility, Parnell and Royal encountered one of Defendant's Second Shift Supervisors, Joshua Klein ("Klein"). Royal testified that Parnell and Klein disagreed over the manner that the overweight load should be unloaded (Dkt. #22-1 at p. 7).[1] Ultimately, Parnell and Royal allegedly adhered to Klein's directions (Dkt. #22-1 at p. 7). Security footage shows Parnell and Royal removing securement straps from the load. The footage shows that part of the load fell on Parnell during this process, crushing him.

Plaintiffs, relatives of Parnell, filed suit on September 5, 2024, alleging negligence and negligence per se against Defendant (Dkt. #1). Plaintiffs seek actual and exemplary damages, among other relief (Dkt. #1). On October 30, 2025, Defendant moved for summary judgment on three main grounds (Dkt. #18). First, Defendant argues that it did not owe a duty to Parnell. Second, Defendant argues that even if it owed a duty, there is no genuine issue of material fact on the elements of breach and causation. Third, Defendant argues that even if there is a viable tort claim against it, no genuine issue of material fact exists as to malice and gross negligence.

---

[1] According to Royal, Parnell recommended "only unstrap[ing] and untarp[ing] the back," while Klein said to "undo it all" (Dkt. #22-1 at p. 7). Royal later described Klein's directive as "remove the whole thing so we can take some stuff off" and "No, we need to unstrap it all" (Dkt. #22-1 at pp. 8, 9). Klein's affidavit does not directly conflict with Royal's testimony. Klein states that Parnell and Royal "were made aware that they had to remove securement devices and their Prime blue tarp if they wanted [Klein] to assist with cargo adjustment" (Dkt. #18-2).

Plaintiffs filed a response (Dkt. #22). They argue that Defendant's no-duty argument is foreclosed by Texas's proportionate responsibility scheme. In addition, Plaintiffs maintain that fact issues exist as to whether Defendant negligently hired, trained, and supervised Klein, and whether Klein assumed a duty of care under Texas common law by exercising control over Parnell and Royal's repositioning of the load. As to gross negligence, Plaintiffs argue that genuine issues of material fact preclude summary judgment. Plaintiffs do not address malice.

Defendant filed a reply (Dkt. #27). There, Defendant insists that it owed no duty to Parnell and that its argument is consistent with proportionate responsibility. The reply also reiterates that no fact issue exists as to proximate cause. Defendant also takes issue with Plaintiffs' theory that Klein exercised control over Parnell and Royal's work. It argues that the theory has not been pleaded, and that even if it were, it fails on the merits because Klein did not control Parnell and Royal's work. Similarly, Defendant argues that the negligent hiring claim was never pleaded but fails on the merits alongside the negligent training and supervision claims that were pleaded. And in the same spirit, Defendant argues that vicarious liability based on Klein's conduct was not pleaded, and that it also fails on the merits because Klein did not commit a tort. Finally, the reply argues that Plaintiffs' response (1) forfeited Plaintiffs' negligence per se theory and any claim for exemplary damages based on malice; and (2) provided no evidence of the subjective and objective components of gross negligence to support an award of exemplary damages on that ground.

Related motions and objections were also filed. Plaintiffs filed objections to Defendant's summary judgment evidence (Dkt. #21), and Defendant filed a response (Dkt. #28). Defendant, for its part, filed objections to the declaration of Brooks Rugemer ("Rugemer"), which Plaintiffs attached to their response to the motion for summary judgment (Dkt. #29). Rugemer is a

3

commercial trucking specialist retained by Plaintiffs (Dkt. #22-1). Defendant separately challenged

Rugemer's testimony through a motion to exclude Rugemer's expert report (Dkt. #43). Plaintiffs

filed a response (Dkt. #46), and Defendant filed a reply (Dkt. #47).

Both motions are ripe for adjudication.

## LEGAL STANDARD

### I.    Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims

or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper

under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must

resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]."

*Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its

motion and identifying "depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of

material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden

of proof on a claim or defense for which it is moving for summary judgment, it must come forward

with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or

4

defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hou. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (citation modified). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## II.    Admissibility of Expert Testimony

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. The Rule was amended in 2023 to provide that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

The amendment was intended to: "(1) 'clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule' and (2) 'emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology.'" *Vega v. Ross Stores Inc.*, No. 4:24-CV-00733-SDJ-BD, 2025 WL 2601538, at *2 (E.D. Tex. Sept. 8, 2025) (citing FED. R. EVID. 702 advisory committee's note to 2023 amendment).

In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court instructed courts to function as gatekeepers when determining whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589.

6

"This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (explaining that, "[a]lthough the Daubert analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves"). Although "the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.' " *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment).

## ANALYSIS

### I.      Motion for Summary Judgment

The Court starts with the argument that Defendant did not owe Parnell a duty, then proceeds to Defendant's other challenges. For the most part, summary judgment will be denied.

#### A.      Duty

Under Defendant's interpretation of *United States v. Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953), a shipper that assumes the duty of loading cargo must exercise reasonable care to the agents of the carrier only to avoid creating hidden and latent defects.[2] Under Defendant's theory, if the defect is not hidden and latent, it owes no duty to the carrier's agents. Plaintiffs' most

---

[2]  The Court is not convinced that Defendant correctly reads *Savage*, see *Jenkins v. Immedia, Inc.*, 389 F. Supp. 3d 925, 927 (D. Colo. 2019) (interpreting *Savage* to hold only "that a carrier, who had actual knowledge of the unsafe condition of the cargo, was the party with the last clear chance to avoid damage to the shipped cargo and, as such, was the principal offender and obligated to pay for the damage to the goods"), but the Court need not reach the issue because summary judgment is unwarranted even under Defendant's interpretation.

persuasive response is that *Savage* was decided during the distant era of contributory negligence and invokes the outdated doctrine of "last clear chance," which was abrogated in Texas with the advent of comparative negligence. *Compare Savage*, 209 F.2d at 447 ("Sometimes the principal fault is attributable to the party who performed the last act which resulted in the damage and without which it would not have occurred, that is, to the party who had the last clear chance to avoid the accident."), *with Dugger v. Arredondo*, 408 S.W.3d 825, 832 (Tex. 2013) ("Proportionate responsibility abrogated former common law doctrines that barred a plaintiff's recovery because of the plaintiff's conduct—like assumption of the risk, imminent peril, and last clear chance—in favor of submission of a question on proportionate responsibility.").

In a case similar to this one, the Texas Supreme Court reminded defendants that they generally cannot point to another tortfeasors' conduct to eliminate their own duty of reasonable care to foreseeable victims. *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 639–40 (Tex. 2023). In *Evans*, a rental equipment company that loaded a flatbed trailer argued that it owed no duty to persons on the road because the carrier had a non-delegable duty to secure the load before transporting it. *Id.* at 639. Relying on comparative negligence principles, the Texas Supreme Court rejected the argument, explaining that:

> Even assuming the trucking company had such duties, as it likely did, United Rentals cites no authority indicating that the mere existence of a statutory duty enforceable against the trucking company automatically eviscerates all other parties' common law duties that might have arisen depending on the facts. Texas law of course recognizes that more than one defendant can be held liable for a single injury to a plaintiff. The entirety of Chapter 33 of the Civil Practice and Remedies Code, setting out rules of proportionate responsibility, is premised on the principle that more than one party can be legally responsible for a single injury.
>
> * * *
>
> United Rentals may be correct, in a sense, that the trucking company's legal duties regarding safe loading of its trucks are "non-delegable," meaning that the trucking

company cannot relieve itself of those duties. But the plaintiffs' claims do not attempt to impose the trucking company's statutory duties on United Rentals. Instead, they seek to hold United Rentals liable, under the common law, for the foreseeable consequences of its own negligence, which contributed to the unsafe loading of the boom lift and thereby to Davis's death. United Rentals does not escape its common law duty to avoid negligent actions that create hazardous road conditions merely because other sources of law impose similar duties on other parties.

*Id.* at 639–40.

Plaintiffs argue that, under *Evans*, whether or not Parnell (or Parnell's employer) had a non-delegable duty to ensure the cargo was safely loaded is immaterial to whether Defendant owed a duty to avoid negligently creating foreseeable harm when loading the cargo. Under Plaintiffs' theory, Parnell's own failure to ensure the cargo was safely loaded is something for the jury to consider when in apportionment, not a total bar on recovery. And Plaintiffs argue that using a hidden-or-latent-defect test for duty treats Parnell's plaintiff's injury-causing conduct (failing to reasonably inspect or secure cargo despite the obviousness of a defect) as a total bar on recovery—echoing the era of contributory negligence.

Defendant responds that *Evans* is distinguishable because the decedent there was a third-party motorist, while here, the decedent was an agent of the carrier.[3] Moreover, as Defendant

---

[3]  In *Evans*, the court below seemed to contemplate a distinction based on a plaintiff's third-party motorist status. *See United Rentals N. Am., Inc. v. Evans*, 608 S.W.3d 449, 462 (Tex. App.—Dallas 2020) ("United Rentals does not cite any case applying the *Savage* rule and attendant regulations to negate a defendant's duty owed to third party motorists . . . ."), *rev'd on other grounds*, 668 S.W.3d 627 (Tex. 2023); *see also Bujnoch v. Nat'l Oilwell Varco, L.P.*, 542 S.W.3d 2, 8 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("[T]his case involves personal injury to an innocent third party with no connection to the trucking industry—someone who had no opportunity to remedy any negligence."). The Court will not needlessly make an *Erie* guess on this question.

sees it, there is no conflict between the *Savage* rule and proportionate responsibility because a shipper *can* be included in apportionment if it creates a hidden and latent defect in the cargo.[4]

The Court need not predict whether the Texas Supreme Court would find a distinction between the duty a shipper generally owes to persons on the road and the duty owed to the person transporting the cargo, or whether it would adopt a no-duty rule that turns on the plaintiff's own injury-causing conduct. Here, even assuming that the Texas Supreme Court would adopt the *Savage* rule as interpreted by Defendant, summary judgment would be unwarranted because a fact issue exists as to the *Savage* rule's exception for hidden and latent defects.

To argue that there is no fact issue as to the hidden and latent nature of the alleged defect, Defendant primarily points to the following deposition testimony from Royal:

> Q. And how – best you can recall, what did that load look like?
>
> A. It was under a tarp, so I didn't get to see it when we first came, but when they – when they pulled it out and we started looking at it, to my knowledge, it was done wrong. That's what I was told, that there shouldn't be a split in the middle. Like when I was on top, I could have fallen straight through. [Parnell] said that's not supposed to be that way, so to my knowledge, it didn't – it wasn't supposed to be that way.

(Dkt. #22-1 at p. 4).

---

[4] A no-duty rule for open and obvious dangers would not be totally unprecedented under Texas law. In *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 206 (Tex. 2015), the Texas Supreme Court addressed a certified question from the Fifth Circuit regarding arguably conflicting precedent in the area of landowner liability for injuries to employees and invitees. One of the cases was *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 521 (Tex. 1978), where the Texas Supreme Court held that a "plaintiff's knowledge, whether it is derived from a warning or from the facts, *even if the facts display the danger openly and obviously*, is a matter that bears upon his own negligence; it should not affect the defendant's duty." (emphasis added). In *Kroger*, the Texas Supreme Court acknowledged *Parker*'s "rather clear language," but held that "the better approach" is to follow more recent precedent holding that a landowner owes no duty to its employees when a danger is open and obvious (unless an exception applies). *Kroger*, 465 S.W.3d at 207. This Court does not suggest that the shipper-carrier relationship bears any legally significant similarity to that of a landowner and invitee, but *Kroger* helps show that this Court would need to perform an *Erie* guess to reject Defendant's argument that the open and obvious nature of a danger bears on duty in this case. Because a fact issue exists on the hidden latency of the defect, the Court need not reach the issue at this stage.

10

But this evidence is only probative to whether the "split in the middle" of the load, with an accompanying risk of "fall[ing] straight through," was open and obvious—it does not conclusively establish that the split in the middle was the relevant risk. *See Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 220 (3d Cir. 2010) ("The District Court reasoned that because the absence of blocking and bracing was readily apparent, there was no issue of fact concerning the latency of the alleged defect. However, the obviousness of the absence of a particular method of securing a load, does not necessarily compel a conclusion that the risk created by the missing securement device is patent."); *Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 868 (4th Cir. 1984) ("Franklin's loading of the heavy steel coils flat on pallets down the center of the trucks without strapping or chocking was, of course, open and obvious to the trucker. It does not follow, however, that the defect in this manner of loading was open and obvious.").

The next line of questioning following the quoted deposition excerpt highlights that the obviousness of the split in the middle of the load is not necessarily an indication that the relevant defect was open and obvious:

> Q. When you said [Parnell] said it was not supposed to be that way, you mentioned a gap. So kind of help the jury understand that. There were – were there two stacks of cargo on this trailer?
>
> A. Yeah I mean . . . if that's the way you want to – yeah they were individual pieces, so I guess the way they stacked it left a big hole in the middle, and when I was up there like grabbing the bungee cord, he even remind[ed] me of it a second time. He said, "Remember there's a hole there. Don't fall in."
>
> Q. And so when you say [Parnell] said this was loaded wrong, you're – you're referencing the fact that there was a gap in between these two stacks?
>
> A. Right. He was insinuating that these were supposed to be all pushed forward.
>
> Q. Okay. Got it. Was there anything about the way those materials were stacked that led you-all to believe that – that the load was unstable or loaded improperly or anything like that?

11

. . .

A.  Oh. At that time no.

(Dkt. #22-1 at pp. 4–5).[5]

In sum, the Court need not predict whether the Texas Supreme Court would adopt the *Savage* rule as interpreted by Defendant. Even assuming that it would, summary judgment would be unwarranted because fact issues exist regarding the hidden and latent nature of the alleged defect. Accordingly, summary judgment is denied on duty grounds.

### B.       Breach and Causation

After considering the summary judgment evidence and the arguments presented in the briefs, the Court finds that genuine issues of material fact preclude a finding that Defendant did not breach a duty or proximately cause damages as a matter of law. Summary judgment is unwarranted.

### C.       Negligent Hiring, Training, and Supervision

Plaintiffs assert negligent training and supervision theories in their complaint and assert a negligent hiring theory in their response to the motion for summary judgment. Although the Texas Supreme Court has not squarely addressed the existence, elements, and scope of negligent training, hiring, and related torts, "when Texas courts have recognized such claims, they apply the familiar elements of simple negligence, duty, breach, causation, and damages." *Padilla v. Wal-Mart Stores Tex., LLC*, No. EP-19-CV-4-KC, 2020 WL 1902535, at *9 (W.D. Tex. Jan. 31, 2020). This Court therefore treats negligent hiring, training, and supervision as theories of breach in a negligence claim, rather than separate causes of action.

---

[5]   The ellipsis omits an objection to "leading," which is overruled.

Based on the summary judgment evidence and the arguments presented in the briefs, the Court finds that genuine issues of material fact exist as to the essential elements of Plaintiffs' negligent training and supervision theories—but not the negligent hiring theory.

To support their negligent hiring theory, Plaintiffs allege that Klein never worked in the industry prior to becoming the Second Shift Shipping Supervisor in February 2023 and received insufficient training to make up for it. But Klein's inexperience alone does not raise a fact question as to negligent hiring, and to what extent his inexperience should have affected training can be explored through Plaintiffs' negligent training theory. *See Johnson v. Historic Sys., Inc.*, No. 03-97-00503-CV, 1999 WL 46687, at *1 (Tex. App.—Austin Feb. 4, 1999, no pet.) ("There must be evidence of incompetence that the employer failed to discover due to lack of diligence; if there is no evidence of incompetence to discover, then the lack of diligence could not have caused either the hiring of an incompetent or the injuries resulting from the incompetent's actions."); s*ee Baird v. Shagdarsuren*, No. 3:17-CV-2000-B, 2020 WL 208815, at *9–10 (N.D. Tex. Jan. 14, 2020) (granting summary judgment for employer on negligent hiring theory but not the negligent training theory); *Saldana v. Selvera*, No. 1:21-CV-00144, 2023 WL 3705813, at *2 (S.D. Tex. Mar. 8, 2023) ("[E]vidence that a driver is inexperienced, without more, does not permit an inference that the driver was incompetent." (citation modified)).

Because no genuine issue of material fact exists as to Defendant's negligent hiring, summary judgment will be granted on that theory of breach. It is therefore unnecessary to reach the issue of whether Plaintiffs' failure to specifically allege negligent hiring in the complaint is fatal. But summary judgment will be denied as to the negligent training and supervision claims.

## D.    Vicarious Liability and Control-of-Work

Defendant argues that vicarious liability was not pleaded, and that it fails on the merits because Klein did not commit a tort. Defendant makes the same argument regarding Plaintiffs' theory that Klein exercised control of the unloading process.

The complaint alleges, among other things, that Defendant failed "to provide proper instructions to [Parnell] regarding safe unloading procedures" (Dkt. #1 at p. 4). A company can only act through its agents and Klein is not an individual defendant in this case, so this statement fairly captures Plaintiffs' allegation that Klein's instructions were not reasonably safe and that his conduct is attributable to Defendant. The complaint also explicitly mentions that "Klein instructed [Parnell] and [Royal] that it was their responsibility to unstrap the load themselves and have it fixed" (Dkt. #1 at p. 3). Although discovery and the summary judgment record has added new color to these theories, the Court disagrees that the theories at issue were not pleaded.

As to the argument that no fact issue exists as to Klein's negligence and control over Parnell and Royal's work, the Court also disagrees. After considering the summary judgment evidence and the arguments presented in the briefs, the Court finds that a genuine issue of material fact exists as to Klein's negligence and his exercise of control. Summary judgment is therefore unwarranted.

## E.    Malice and Gross Negligence

Defendant challenges Plaintiffs' grounds for exemplary damages: malice and gross negligence. Chapter 41 of the Texas Civil Practice & Remedies Code defines malice as "a specific intent by the defendant to cause substantial injury or harm to the claimant." TEX. CIV. PRAC. & REM. CODE § 41.001(7). It defines gross negligence as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

14

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Id.* § 41.001(11).

A corporation cannot be held liable for gross negligence unless "the corporation itself (1) authorized or ratified an agent's gross negligence, (2) commits gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal." *Alfaro v. Panther II Transp., Inc.*, No. CV H-22-2619, 2024 WL 2754052, at *4 (S.D. Tex. May 29, 2024).

Defendant correctly argues that Plaintiffs fail to address their malice allegation in the response to the motion for summary judgment. The summary judgment record reveals no evidence that Defendant had a specific intent to harm Parnell. Summary judgment will therefore be granted as to the claim for exemplary damages based on malice.

As to gross negligence, Defendant argues that Plaintiffs failed to brief the elements of gross negligence at the corporate level, and that there is no evidence of the subjective and objective prongs required for gross negligence. The Court disagrees on both counts. Plaintiffs' response does not argue that Klein engaged in gross negligence that should be imputed to Defendant (in which case, it would be necessary to show authority, ratification, vice principal status, or that Klein was unfit). Instead, Plaintiffs' gross negligence theory points to Defendant's own policies.

After considering the summary judgment evidence and the arguments presented in the briefs, the Court finds that a genuine issue of material fact exists as to Plaintiffs' claim for exemplary damages based on Defendant's alleged gross negligence. Summary judgment is unwarranted.

## F.      Negligence Per Se

Defendant argues that Plaintiffs' negligence per se theory is barred as a matter of law because, among other things, Plaintiffs do not identify any statutes that impose a different duty than the general duty to exercise ordinary care. Plaintiffs' response does not specifically address negligence per se and seems to agree that the general standard of care applies (*See* Dkt. #22 at p. 24 ("To be clear, this is not a regulatory action but a common-law negligence case . . . .")). Comparing Plaintiffs' complaint to the response also highlights the questionable status of the negligence per se theory. The complaint, without citing any particular statute, broadly alleges violations of "Federal Motor Carrier Safety Regulations, Texas Department of Transportation Regulations, and Occupation Safety and Health Administration Regulations" (Dkt. #1 at p. 4). The response to the motion for summary judgment, however, states that the "Federal Motor Carrier Safety Regulations do not govern the workplace injury at issue" (Dkt. #22 at p. 24 (modified for readability)), and that "this is not a regulatory action but a common-law negligence case; OSHA regulations are relevant only to the standards of care and are not dispositive on ultimate liability" (Dkt. #22 at p. 24).

In Texas, "negligence per se is not a separate cause of action that exists independently of a common-law negligence cause of action." *Sisley v. Rowland Truck Lines*, No. 3:23-CV-299, 2025 WL 3050065, at *3 (S.D. Tex. Aug. 5, 2025) (citation modified). Instead, "negligence per se is merely one *method* of proving a breach of duty." *Id.* (citation modified). Plaintiffs do not address Defendant's negligence per se arguments, so the Court will grant summary judgment on this theory of breach. *See Muse v. Kroger Tex., L.P.*, No. 3:14-CV-3225-N, 2017 WL 11679037, at *2 (N.D. Tex. Apr. 12, 2017) ("Kroger argued that this standard of care simply incorporates the reasonable person standard from common law negligence and this does not support a negligence per se theory. Muse

16

does not contest this argument, so the Court grants Kroger's motion for summary judgment on Muse's negligence per se claim." (citation omitted)).

* * *

In sum, genuine issues of fact preclude summary judgment on the bulk of Plaintiffs' negligence theories as well as exemplary damages based on gross negligence. Summary judgment will be granted as to exemplary damages based on malice, and the negligence theories of negligent hiring and negligence per se.[6]

## II.    Motion to Exclude

Defendant challenges the testimony of Brooks Rugemer, a commercial transportation specialist, on several grounds (Dkt. #43). Specifically, Defendant argues that some of Rugemer's opinions lack a factual foundation, that Rugemer is unqualified, and that Rugemer's opinions are unreliable or irrelevant. On these grounds, Defendant asks the Court to exclude Rugemer's testimony in its entirety. Plaintiffs argue that none of Defendant's arguments have merit.

For background, Rugemer's declaration attached to the response to the motion for summary judgment concludes, among other things, that Defendant's loading protocols fell below industry standards. The Court now proceeds to evaluate Defendant's arguments.

### A.    Rugemer's Opinions Regarding the Trailer Axle and Overweight Load

Defendant argues that no factual foundation supports Rugemer's statement that "it was discovered" that Defendant overloaded the trailer (Dkt. #43 at p. 4). Defendant also argues that Rugemer applies the wrong weight formula because different axle configurations have different weight regulations.

---

[6] The Court considered the parties' objections to the summary judgment evidence and relied only on the evidence capable of being presented in admissible form when making its rulings.

17

As to the first concern, the Court finds that the challenge goes to the weight of Rugemer's testimony, rather than admissibility. *See, e.g.*, *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 295–96 (5th Cir. 2019) ("If Smith missed any important facts, the oversight should go to the weight of his opinion, not its admissibility."). The second concern also goes to weight, particularly in light of the Court's decision to grant summary judgment on the negligence per se theory of breach. At trial, the parties may present regulatory provisions, but the regulations will not substitute the standard of care.

## B.    Rugemer's Qualifications

Defendant also argues that Rugemer's report and resume "do not demonstrate he is qualified to offer expert testimony on nuanced aluminum extrusion loading standards" (Dkt. #43 at p. 7). Defendant further argues that Rugemer's reliance on "blogs" demonstrates his "lack of expertise in this area" (Dkt. #43 at p. 8).

Rugemer has twelve years of experience as a professional tractor trailer driver, thirty years of experience with transportation-related accident investigations, and he is a Certified Director of Safety recognized by the North American Transportation Management Institute. Even though his experience does not specifically relate to aluminum loading, after reviewing Rugemer's qualifications, the Court finds that he is qualified to testify as an expert in this case. *See, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."). Whether his lack of experience with aluminum casts doubt on his testimony is a matter for cross-examination.

## C.    Rugemer's Methodology

Defendant's challenge to Rugemer's methodology is lumped in with its challenge to qualifications. From what the Court can discern, the main methodology challenge is that Rugemer

does not sufficiently discuss Parnell's potential role in the accident, and that this deficiency demonstrates that Rugemer did not apply a reliable methodology.

The Court has already ruled that, notwithstanding Parnell's duty to secure the cargo, Defendant had a duty to exercise reasonable care in loading the cargo—at least to prevent hidden and latent defects. The Court is not convinced that Rugemer and Defendant's disagreements about which party had a duty or what regulations should have been followed warrant excluding Rugemer's testimony. After reviewing Rugemer's expert materials attached to the response to the motion for summary judgment and the response to the motion to exclude (Dkt. #22-1 at pp. 194–207; Dkt. #46-1),[7] the Court finds that it is more likely than not that Rugemer's methodology is reliable. FED. R. EVID. 702(c).[8]

Defendant also argues that "[u]nreliable methodology aside, Rugemer's Report is devoid of any independent or verifiable analysis supporting his conclusion; he merely assumes that [Defendant] loaded heavier bundles on top lighter bundles" (Dkt. #43 at p. 9). Defendant argues that a photograph taken after the accident shows only the rear of the flatbed, which did not fall, and that an exemplar sticker that shows only "one aluminum bundle's weight and length" are insufficient to provide a basis for Rugemer's opinions (Dkt. #43 at p. 9).

The Court finds that these concerns go to the weight of Rugemer's opinions. An independent investigation is not required for an expert to survive muster under Rule 702 (particularly here, when the cargo at issue was delivered by the time Plaintiffs retained him), and

---

[7]  Differences between the expert materials attached to the response to the motion for summary judgment and the response to the motion to exclude are immaterial to the Court's rulings on either motion.

[8]  The Court is also unpersuaded that any "analytical gap" in Rugemer's opinion is sufficient to render Defendant's criticisms a matter of admissibility.

whether Rugemer should have looked at different pictures or the characteristics of more loads is a matter for cross examination. *See United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019), *as revised* (Aug. 9, 2019) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Exclusion of expert testimony "is the exception rather than the rule," FED. R. EVID. 702 advisory committee's note to 2000 amendment, and the Court is not convinced that this case warrants deviating from the general rule.

### D.      Relevance of Failure to Warn Opinion

Defendant takes issue with Rugemer's statement that Klein failed to warn Parnell of the potential hazard of removing the belly straps that were securing the load. In Defendant's view, the opinion is not relevant because "this is not a workplace injury" (Dkt. #43 at p. 10). Defendant continues by re-asserting its argument that Klein did not exercise control over Parnell's work. The Court has already ruled that genuine issues of fact preclude summary judgment on the issue of control. More relevant to the motion at hand, the Court finds that it is more likely than not that Rugemer's testimony will be relevant and helpful for the jury. FED. R. EVID. 401, 702(a).

* * *

In short, the Court is persuaded that Rugemer is qualified as an expert under Rule 702, and that Rule 702's prongs are established by a preponderance of the evidence. Exclusion is therefore unwarranted.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #18) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiffs' negligence claims based on negligent hiring and negligence per se are hereby **DISMISSED**.

It is further **ORDERED** that Plaintiffs' claim for exemplary damages based on malice is hereby **DISMISSED**.

It is further **ORDERED** that Defendant's Motion to Exclude Plaintiffs' Expert Brooks Rugemer (Dkt. #43) is hereby **DENIED**.

**IT IS SO ORDERED.**

 **SIGNED** this 30th day of April, 2026.


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE